```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 08/09/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANCHOR SALES & MARKETING, INC.,

          Plaintiff,

          v.

RICHLOOM FABRICS GROUP, INC.,

          Defendant.

No. 15-CV-4442 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Anchor Sales & Marketing, Inc. owns U.S. Patent No. 7,213,633 (the "'633 Patent") for a "Method of Forming Scalloped Configuration in Curtains" and alleges that certain products manufactured by Defendant Richloom Fabrics Group, Inc. infringe on the rights secured by that patent. Defendant moves to dismiss or in the alternative for summary judgment, arguing that its products do not infringe the '633 Patent as a matter of law and that prosecution history estoppel bars Plaintiff from asserting a theory of relief based on the doctrine of equivalents. Because the Court agrees that Plaintiff is estopped from pursuing an infringement theory based on the doctrine of equivalents, Defendant's motion is granted.

## BACKGROUND

### I. History of the '633 Patent

    On March 24, 2004, inventor Frank G. Petronzio filed with the Patent and Trademark Office ("PTO") a provisional patent application for what later became the '633 Patent. *See* Diebner Decl. Ex. B at 2.[1] The application described "a method of forming scalloped configuration in

---

[1] The Amended Complaint does not refer to the '633 Patent's prosecution history. The Court, however, "may take judicial notice of official records of the [PTO]." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014) (citing *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010)). Because Plaintiff agrees

curtains and draperies used for hanging from windows, thus imparting desired decorative and aesthetic appearance thereto." *Id.* It had eight numbered claims:

> 1. A method of forming scalloped configuration in a double-layer curtain for hanging from windows, said curtain having a front layer and a back layer, each of said layers being defined by an upper edge and a lower generally parallel edge, and two generally parallel sides, said method comprising:
>
>> (a) providing two pairs of ties, each tie having an upper end attached to said curtain, and a freely hanging lower end,
>>
>> (b) each of said pairs of ties being attached at their upper ends to one of said curtain layers a finite distance from the top edge and its respective side edge, and
>>
>> (c) slipping through each pair of said ties a solid bead having a passageway therethrough for passage of said ties and raising each bead to approximately the same height until forming the scalloped configuration in said curtain.
>
> 2. A method as in claim 1 wherein each of said beads is spherical in shape having a central through passageway.
>
> 3. A method as in claim 1 wherein the ends of each pair of ties which are attached to the curtain lie on a common line which is generally parallel to the top and bottom edges of each of said layers.
>
> 4. A method as in claim 2 wherein the ends of each pair of ties which are attached to the curtain lie on a common line which is generally parallel to the top and bottom edges of each of said layers.
>
> 5. A method of forming a scalloped configuration in a single layer curtain, said curtain layer being defined by an upper edge and a lower generally parallel edge, and two generally parallel side edges, said method comprising:
>
>> (a) providing two pairs of ties, each tie having an upper end attached to said curtain, and a freely hanging lower end,

---

that the documents attached to the Diebner Declaration are "[t]rue copies" of documents filed with the PTO, Pl.'s Opp. at 8, the Court will take judicial notice of them and consider them without converting Defendant's motion to dismiss into one for summary judgment.

2

>  (b)   each of said pairs of ties being attached at their upper ends to said curtain a finite distance from the top edge and respective side edge, and
>
>  (c)   slipping through each pair of said ties a solid bead having a passageway therethrough for passage of said ties and raising each bead to approximately the same height until forming the scalloped configuration in said curtain.
>
>  6.   A method as in claim 5 wherein each of said beads is spherical in shape having a central through passageway.
>
>  7.   A method as in claim 5 wherein the ends of each pair of ties which are attached to the curtain lie on a common line which is generally parallel to the top and bottom edges of said layers.
>
>  8.   A method as in claim 6 wherein the ends of each pair of ties which are attached to the curtain line on a common line which is generally parallel to the top and bottom edges of each of said layers.

*Id.* at 9–10. All the claims accordingly incorporated a method that required "slipping through each pair of said ties a solid bead having a passageway therethrough for passage of said ties and raising each bead to approximately the same height until forming the scalloped configuration in said curtain." *Id.* (claims 1(c) and 5(c)).

The PTO initially rejected the application. *See* Diebner Decl. Ex. C at 2. The examiner reasoned that all eight claims were "unpatentable" in light of two instances of prior art, namely U.S. Patent Nos. 928,190 (the "'190 Patent" or "Flynn") and 2003/116,287 (the "'287 Patent" or "Titus"). *Id.* at 3, 5. According to the examiner,

>  Flynn discloses two curtains . . . , the latter of which is raised in a pleated formation at two locations by cords . . . . Titus [] discloses a similar pleating arrangement wherein spaced cords are adjustably attached to spherical members . . . so as to adjust the extent of raising and pleating of the curtain. In view of this teaching it would have been obvious to modify Flynn whereby the front and back extents of his cords extend through an adjustable sphere so as [to] render the amount of pleating adjustable.

*Id.*

Petronzio made no substantive amendments to his claims, but disputed the PTO examiner's analysis and argued that the two examples of prior art were distinguishable. *See* Diebner Decl. Ex. D. According to Petronzio, the prior art "d[id] not disclose or suggest [a] method of window treatment" that "is formed by *raising the spherical beads* through which the ties are passed." *Id.* at 4 (emphasis in original). With regard to the '190 Patent, Petronzio argued that Flynn "is only directed to window brackets" and includes "no disclosure . . . as to how one can produce a scalloped configuration" in curtains. *Id.* As for the '287 Patent, Petronzio argued that, unlike his application, Titus describes a method by which scalloped curtains are created by "sliding . . . cords through [a] vertical channel[]" when "[t]he end of each cord is provided with an end device . . . such as a cord stop or a toggle." *Id.* at 5. Petronzio stated that "[r]aised curtains per se are well known for window treatment but the method of raising the curtains can indeed vary." *Id.* What distinguished his method was the presence and functioning of the beads. Petronzio concluded that "[i]ndeed sliding the sphere up and down is the *essence* of this invention for forming the desired configuration in the curtain." *Id.* at 6 (emphasis added).

The PTO examiner subsequently allowed all eight of Petronzio's claims and granted the '633 Patent. *See* Diebner Decl. Ex. E. The examiner explained that "the prior art of record does not disclose a method as recited wherein two ties are passed through a bead to position a curtain at desired heights." *Id.* at 5.

## II. Plaintiff's Allegations

Plaintiff owns the '633 Patent. Am. Compl. ¶ 4. Plaintiff alleges that Defendant "manufactured, used, offered for sale and/or sold within the United States, in this district and elsewhere, products which infringe" that patent "and is continuing to manufacture, use, sell and offer to sell such infringing products in the United States, in this district and elsewhere." *Id.* ¶¶ 5–7. Plaintiff specifically identifies three such allegedly infringing products: (1) Defendant's "Risa

4

Window Curtain Tier Pair and Valance," which is offered for sale by Bed, Bath and Beyond, *see id.* ¶ 5; (2) Defendant's "Bijoux Soiree Rod-Pocket Tie-Up Tailored Valance," which is offered for sale by JC Penny, *see id.* ¶ 6; and (3) Defendant's "1 Rod Rock Tie Up Valance," *see id.* ¶ 7.

In its Disclosure of Asserted Claims and Infringement Contentions, Plaintiff contends that Defendant's products are "made by the same method steps as in claim 1, the only difference [being] that the pair of ties in claim 1 is secured by a bead whereas in the infringing product the pair of ties are secured by fabric ties." Dkt. 23 at 2. Plaintiff thus does not argue that Defendant's curtains replicate Plaintiff's exactly, but rather that "Defendant's method of forming a scalloped configuration, and maintaining such configuration is *equivalent* to Plaintiff's claimed method of forming and maintaining such configuration." Pl.'s Opp. at 2 (emphasis in original).

After Defendant moved to dismiss Plaintiff's initial pleading, Plaintiff filed the instant Amended Complaint. *See* Dkt. 13, 21. Defendant now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. *See* Dkt. 25.

## LEGAL STANDARD

"In order to determine whether [a patent] pleading is sufficient to survive [a] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must apply Second Circuit law." *Regeneron Pharm., Inc. v. Merus B.V.*, No. 14-CV-1650 (KBF), 2014 WL 2795461, at *1 (S.D.N.Y. June 18, 2014) (citing *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378–79 (Fed. Cir. 2005) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of the regional circuits on non-patent issues.")). "The principles set forth in [*Bell Atlantic Corp. v. Twombly*, 550

5

U.S. 544 (2007),] apply to the evaluation of pleadings in patent infringement cases in this Circuit." *Regeneron Pharm.*, 2014 WL 2795461, at *2.[2]

Under this standard, a complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss brought pursuant to Rule 12(b)(6). *Twombly*, 550 at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A case should be dismissed "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558; *see also Regeneron Pharm.*, 2014 WL 2795461, at *1–2 (applying *Twombly* and *Iqbal* to a complaint alleging patent infringement).

"When reviewing a motion to dismiss, a court must 'accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.'" *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). "[T]he court 'may also consider matters of which judicial notice may be taken.'" *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

---

[2] Although the parties do not raise the issue, "[t]he district courts in this Circuit have not been entirely consistent regarding whether [*Twombly*] or [Form 18 in the Appendix of Forms to the Federal Rules of Civil Procedure] controls the pleading standard for . . . [patent] infringement cases." *Lyda v. CBS Corp.*, No. 14-CV-6572 (VEC), 2015 WL 4393120, at *2 (S.D.N.Y. July 16, 2015). Even if Form 18 were to govern, the result in this case would be the same. As discussed in further detail below, the doctrine of prosecution history estoppel presents "a question of law." *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015). Because this doctrine bars Plaintiff's claim of infringement as a matter of law, the Amended Complaint would fail to state a claim even under Form 18's more lenient pleading requirements.

6

## DISCUSSION

Patent "[i]nfringement can be established in either of two ways: through direct infringement (which is also known as literal infringement), or through the doctrine of equivalents." *Baseball Quick, LLC v. MLB Advanced Media L.P.*, No. 11-CV-1735 (KBF), 2014 WL 6850965, at *4 (S.D.N.Y. Dec. 4, 2014) (citing *J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001)). As noted above, Plaintiff here does not raise a theory of direct infringement; rather, it argues that it is entitled to relief only under the doctrine of equivalents. *See* Pl.'s Opp. at 2 (arguing that Defendant's method "is *equivalent* to Plaintiff's" (emphasis in original)).

"Under [the doctrine of equivalents], a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (quoting *Graver Tank & Mfg. Co. v Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). "[A] patentee may establish infringement under the doctrine of equivalents if an element of the accused device 'performs substantially the same function in substantially the same way to obtain the same result as the claim limitation.'" *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1202 (Fed. Cir. 2014) (quoting *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005)). "[I]nfringement under the doctrine of equivalents is a question of fact." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015).

Prosecution history estoppel, however, can bar a patentee from arguing infringement under the doctrine of equivalents. "Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). It "applies when an applicant

during patent prosecution narrows a claim 'to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable.'" *EMD Millipore*, 768 F.3d at 1203 (quoting *Warner-Jenkinson*, 520 U.S. at 30–31). "Estoppel then bars the applicant from later invoking the doctrine of equivalents to recapture the surrendered ground." *Id.* (citing *Festo Corp.*, 535 at 734). "Whether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law." *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015); *see also EMD Millipore*, 768 F.3d at 1203 (holding that "it was unnecessary for the district court to perform a doctrine of equivalents analysis because prosecution history estoppel bars [the patentee's] arguments"). If a court concludes prosecution history estoppel applies, "the patentee may not recover for infringement where infringement would require an equivalence between a claim element and an aspect of the accused item that falls within the estoppel." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997).

"[P]rosecution history estoppel can occur during prosecution in one of two ways, either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). As the patentee here made no narrowing amendments to his claims after receiving the PTO's initial rejection, *compare* Diebner Decl. Ex. B *with* Ex. D, amendment-based estoppel is not at issue. Defendant argues, however, that argument-based estoppel applies. *See* Def.'s Br. at 9–11.

"To invoke argument-based estoppel, . . . 'the prosecution history must evince a clear and unmistakable surrender of subject matter.'" *Conoco, Inc.*, 460 F.3d at 1364 (quoting *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir.

8

2003)). Courts determine whether such a surrender has occurred by examining the prosecution history "as a whole." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000). "An objective standard is applied when looking at the prosecution history, the proper inquiry being 'whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.'" *Id.* (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998)).

"Generally, courts will only find argument-based estoppel appropriate when the patentee has *explicitly disavowed* a *specific feature* in the prior art; additional statements meant to further distinguish the claimed invention from prior art do not constitute clear and unmistakable surrender." *Baseball Quick*, 2014 WL 6850965, at *9 (emphasis in original) (collecting cases). Explicit disavowal can occur "when the patentee asserted the singularity or uniqueness of the claimed invention in arguing for its patentability." *Astrazeneca UK Ltd. v. Dr. Reddy's Labs., Ltd.*, No. 08-CV-3237 (MLC), 2010 WL 4721384, at *8 (D.N.J. Nov. 15, 2010). The Federal Circuit has thus held that argument-based estoppel applied in a case in which "the patentee had argued that 'only' the listed compound had the 'particular and novel' property that enabled the invention claimed." *Id.* (quoting *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313–14 (Fed. Cir. 2001)). In another case, the Federal Circuit similarly "held a patentee had clearly and unmistakably limited its claims to a '*singular* rectangular-shaped frame' when it argued the shape in support of patentability during prosecution, and thus had 'surrendered any claim to a frame that was not rectangular or four-sided.'" *Id.* (quoting *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007)). In the *Astrazeneca* case, the court extended this line of Federal Circuit precedent to estop a patentee that argued to the PTO that a product's efficacy when incorporated into a formula was "[s]urprising[]" and "unexpected[]." *Id.* Citing *Forest Laboratories* and

9

*PODS*, the court held that "the emphasis on the surprising and unexpected action . . . clearly and unmistakably indicates to a competitor that other equivalent binders are surrendered." *Id.* at *9.

This Court need not extend the concept of argument-based estoppel as far as the *Astrazeneca* court did in order to conclude that it applies. Contrary to Plaintiff's conclusory assertions, *see* Pl.'s Opp. at 10, the patentee here clearly and unmistakably indicated to competitors that he had surrendered methods of forming scalloped curtain designs that did not involve "sliding [a bead] up and down," Diebner Decl. Ex. D at 6. In particular, the patentee argued to the PTO that unlike the "cord stop[s]" or "toggle[s]" described in the '287 Patent, the "*essence* of [his] invention" was "sliding the sphere up and down." *Id.* at 5–6 (emphasis added). The PTO relied on this argument in granting the '633 Patent. *See* Diebner Decl. Ex. E at 5. Considering the '633 Patent's prosecution history as a whole, the Court thus concludes that argument-based estoppel bars Plaintiff from now arguing infringement under the doctrine of equivalents for methods that do not involve sliding a bead up and down.

The '633 Patent's prosecution history ultimately resembles that analyzed by the Federal Circuit in *PODS*. As discussed above, the patentee in *PODS*, "in support of its assertion of patentability . . . , clearly stated that its claimed frame was rectangular in shape." 484 F.3d at 1368. The Federal Circuit held that "[a] competitor would reasonably believe that PODS had surrendered any claim to a frame that was not rectangular or four-sided in shape, such as [the defendant's] three-sided u-shaped device." *Id.* The patentee here similarly indicated in prosecuting the '633 Patent that a sliding bead was "the essence of [his] invention," Diebner Decl. Ex. D at 6, clearly surrendering to his competitors other methods of forming scalloped curtains that did not involve

the use of such beads. Prosecution history estoppel thus bars Plaintiff from now attempting to reassert that surrendered ground.[3]

## CONCLUSION

Defendant's motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate item number 25 on the docket and to close this case.

SO ORDERED.

Dated: August 9, 2016
New York, New York

Ronnie Abrams
United States District Judge

---

[3] To the extent Plaintiff's Disclosure of Asserted Claims and Infringement Contentions seeks "the right to amend" the Amended Complaint, Dkt. 23 at 1, it is denied as futile in light of the Court's conclusion that Plaintiff's theory of relief fails as a matter of law.